UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIC McHENRY,

                        Plaintiff,

v.                                                          1:13-CV-0657
                                                            (GTS/CFH)
GEORGE BELL; MICHAEL BECHARD; JASON          (Lead)
TEFFT; VILLAGE OF CAMBRIDGE, NEW YORK;
VILLAGE OF GREENWICH, NEW YORK;
KATHERINE HENLEY; WASHINGTON COUNTY,
NEW YORK; WARREN WASHINGTON CARE
CENTER CORPORATION; MICHAEL GUGLIELMONI;
ADIRONDACK HEALTH INSTITUTE, Inc.; EMILY
FERRARO, JENNIFER MacKNIGHT; and REBECCA
EVANSKY,

                        Defendants.

_____


BENJAMIN A. PISANI,

                        Plaintiff

                                                            1:14-CV-0846
                                                            (GTS/CFH)
                                                            (Member)

GEORGE BELL; MICHAEL BECHARD; VILLAGE
OF CAMBRIDGE, NEW YORK; VILLAGE OF
GREENWICH, NEW YORK; ANNE ZUGALLA;
KATHERINE HENLEY; and WASHINGTON
COUNTY, NEW YORK,

                        Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

BREEDLOVE & NOLL, LLP                           BRIAN H. BREEDLOVE, ESQ.
  Counsel for Eric McHenry and Benjamin A. Pisani    CARRIE McLOUGHLIN NOLL, ESQ.
10 Maxwell Drive, Suite 105
Clifton Park, NY 12065

| | |
|---|---|
| CARTER, CONBOY, CASE, BLACKMORE, MALONEY & LAIRD, P.C.<br>  Counsel for George Bell<br>20 Corporate Woods Boulevard<br>Albany, NY 12212 | WILLIAM J. DECAIRE, ESQ.<br>WILLIAM C. FIRTH, ESQ. |
| GOLDBERG SEGALLA LLP<br>  Counsel for Michael Bechard, Jason Tefft and<br>  Village of Greenwich, New York<br>8 Southwoods Boulevard, Suite 300<br>Albany, NY 12211-2526 | JONATHAN M. BERNSTEIN, ESQ. |
| SHANTZ& BELKIN<br>  Counsel for Village of Cambridge, New York<br>26 Century Hill Drive, Suite 202<br>Latham, NY 12110 | M. RANDOLPH BELKIN, ESQ. |
| FITZGERALD MORRIS BAKER FIRTH P.C.<br>  Counsel for Katherine Henley and County of<br>  Washington, New York<br>16 Pearl Street<br>P.O. Box 2017<br>Glens Falls, NY | JOHN D. ASPLAND, ESQ.<br>WILLIAM A. SCOTT, ESQ.<br>JOSHUA D. LINDY, ESQ. |
| BURKE, SCOLAMIERO, MORATI & HURD, LLP<br>  Counsel for Warren Washington Care Center Corp.<br>  and Michael Guglielmoni<br>7 Washington Square<br>Albany, NY 12212 | PETER M. SCOLAMIERO, ESQ. |
| STAFFORD, PILLER, MURNANE, KELLEHER &<br>  TROMBLEY, PLLC<br>  Counsel for Adirondack Health Institute, Inc., Emily<br>  Ferraro, Jennifer MacKnight and Rebecca Evansky<br>One Cumberland Avenue, P.O. Box 2947<br>Plattsburgh, NY 12901 | JACQUELINE M. KELLEHER, ESQ. |
| HON. ERIC T. SCHNEIDERMAN<br>  Counsel for Anne Zugalla<br>Litigation Bureau<br>The Capitol<br>Albany, NY 12224 | RACHEL M. KISH, ESQ.<br>Assistant Attorney General |

HON. GLENN T. SUDDABY, United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this consolidated civil rights action filed by Eric McHenry

("McHenry") and Benjamin A. Pisani ("Pisani") (collectively, "Plaintiffs") against the above

named individuals and entities (collectively, "Defendants") are a motion to dismiss McHenry's

amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the

alternative, for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil

Procedure by defendants, Adirondack Health Institute, Inc., Rebecca Evansky, Emily Ferraro

and Jennifer MacKnight ("the Adirondack Defendants"); a cross-motion to amend the amended

complaint by McHenry; and a motion to dismiss Pisani's complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure by defendant, Anne Zugalla.  (*See* Dkt. Nos. 77, 92 [Lead

Case]; Dkt. No. 35 [Member Case].)

For the reasons set forth below, the motion to dismiss McHenry's amended complaint is

granted and the alternative motion for a more definite statement is denied as moot, McHenry's

cross-motion to amend the Amended Complaint is denied, and the motion to dismiss Pisani's

complaint is granted.

I.      **RELEVANT BACKGROUND**

      **A.      McHenry's Complaint, Amended Complaint and Proposed Second Amended
            Complaint**

Generally, McHenry's Complaint asserts three causes of action stemming from the

investigation and presentment of evidence to a grand jury as well as his indictment and arrest for

endangering the welfare of a child and sexual abuse in the second degree.  (*See generally* Dkt.

No. 1 [McHenry's  Compl.] [Lead Case].)  More specifically, McHenry's Complaint asserts civil

rights claims of false arrest, malicious prosecution and the denial of a fair trial based on

fabrication of evidence against defendants George Bell, Michael Bechard, Jason Tefft, the Villages of Cambridge and Greenwich, New York, Katherine Henley and the County of Washington, New York.

Thereafter, by stipulation of the parties and order of the Court, McHenry amended his complaint, adding Warren Washington Care Center Corporation, Michael Guglielmoni, Adirondack Health Institute, Inc., Emily Ferraro, Jennifer MacKnight and Rebecca Evansky as defendants.  (*See generally* Dkt. No. 44 [McHenry's Am. Compl.].)  More specifically, McHenry alleges that Defendants conspired with one another to falsify and fabricate evidence, to wit, the complaining depositions of minor children, S.C. and two others, knowing they were not capable of understanding the oath.

In opposition to the pending motion to dismiss his Amended Complaint, McHenry filed a cross-motion to amend/correct the Amended Complaint.  Generally, McHenry's Proposed Second Amended Complaint expands the allegations regarding the involvement of the Adirondack Defendants as well as other of the Defendants.  More specifically, McHenry's Proposed Second Amended Complaint alleges that on March 14, 2011, Defendants Ferraro and Evansky met Defendants Bechard and Tefft at the Washington County Care Center at the directions of Defendants Bell and/or Henry for the purpose of fabrication of evidence, to wit, the false statement of S.C.  In addition,  McHenry's Proposed Second Amended Complaint alleges that Defendant MacKnight, at the direction of Defendant Evansky, met with a small class of girls at the local school during which time she convinced these children that they had in fact also been victims of McHenry and that these children were later presented to a grand jury with the cooperation and agreement of each of the individual defendants.  McHenry's Proposed Second Amended Complaint also alleges that Defendants Ferraro, MacKnight and Evansky, with the law

enforcement defendants, at times after March 18, 2011, attended grand jury proceedings with the alleged victims and reinforced the false statements that all of the defendants had assisted in creating with the alleged victims. (*See* Dkt. No. 92-3, at 6-9 [McHenry's Proposed Second Am. Compl.].)

**B.    Pisani's Complaint**

Generally, Pisani's Complaint asserts the same three civil rights claims as does McHenry's Amended Complaint, based in large part on the same factual background. Essentially, Pisani's Complaint alleges that Defendants Bell, Bechard, Henley, Villages of Cambridge and Greenwich, County of Washington and Anne Zugalla, an investigator for the New York State Department of Education, acted in concert to present false, prejudicial, incompetent and misleading evidence to a Grand Jury, to wit, the testimony of S.C., whom they knew to be mentally incompetent. As a result, according to the Complaint, Pisani was indicted on two counts of failing to report allegations of child abuse in an educational setting in violation of Article 23-B of the State Education Law. The Complaint also alleges that the indictment against Pisani was dismissed on June 12, 2012, as there was insufficient evidence before the grand jury to support it. (*See generally* Dkt. No. 1 [Pisani's Compl.] [Member Case]).)

**C.    Parties' Arguments on the Pending Motions**

**1.    Adirondack Defendants' Motion to Dismiss McHenry's Complaint, or in the Alternative, for a More Definite Statement**

Generally, in their memorandum of law, the Adirondack Defendants asserts the following five arguments: (1) the Adirondack Defendants, who are members of the multi-disciplinary team as defined in the New York Social Services Law, are not responsible for investigating and evaluating evidence in sexual abuse cases; (2) McHenry has failed to state a claim pursuant to 42

U.S.C. § 1983 because the Adirondack Defendants are not state actors and because they did not engage in a conspiracy; (3) assuming for the sake of argument that the Adirondack Defendants are state actors or engaged in a conspiracy, McHenry's Amended Complaint fails to state a claim for any constitutional violation for the following reasons: (a) gathering inadmissible evidence and forwarding that evidence to prosecutors does not constitute fabrication, (b) McHenry has not pled facts that support a claim for denial of a fair trial due to fabrication of evidence against the Adirondack Defendants, (c) McHenry has not pled facts that support a claim for denial of a fair trial against the Adirondack Defendants due to extrajudicial statements, (d) McHenry has not pled facts that support a claim for false arrest against the Adirondack Defendants, (e) McHenry has not pled facts that support a claim for malicious prosecution against the Adirondack Defendants, and (f) McHenry has not pled facts sufficient to create a reasonable inference that the Adirondack Defendants lacked probable cause for their limited involvement in McHenry's criminal case; (4) assuming for the sake of argument that the Adirondack Defendants are state actors or engaged in a conspiracy and had an investigative role on the multi-disciplinary team, the Adirondack Defendants are entitled to qualified immunity; and (5) to the extent any claim survives the motion to dismiss, this Court should issue an order for a more definite statement because McHenry's Amended Complaint is so vague and ambiguous as to the Adirondack Defendants' involvement that the Adirondack Defendants cannot reasonably prepare an answer. (*See generally* Dkt. No. 77-2, at 10-24 [Adirondack Defs.' Mem. of Law].)

Generally, in his memorandum of law in response to the Adirondack Defendants' motion, McHenry asserts that his Amended Complaint is sufficient to withstand the Adirondacks' motion to dismiss because it "alleges that [they] personally and actively participated in creating the basis for and arranging the arrest and prosecution by assisting in perpetrating a fraud upon and

deliberately misleading the Court and the Grand Jury." (*See generally* Dkt. No. 92-8, at 2 [McHenry's Response Mem. of Law].) McHenry also seeks permission to further amend his Amended Compliant "[i]n an overabundance of caution" and asserts the following arguments in support of his request: (1) the Adirondack Defendants were state actors by virtue of their actions done in concert with the police and district attorney, and the Proposed Second Amended Complaint is much more detailed and specific in alleging the actions taken by each of these private party defendants; (2) fabrication of evidence in concert with police and prosecutors for the purpose of perpetrating a fraud upon the Court and grand jury is an actionable constitutional violation; and (3) the Adirondack Defendants are not entitled to qualified immunity. (*See generally* Dkt. No. 92-8, at 6-13 [McHenry's Opp'n Mem. of Law].)

Generally, in their reply memorandum of law, the Adirondack Defendants assert the following seven arguments: (1) McHenry's argument regarding state actor status conflates state actor status with liability due to acting in a conspiracy with a state actor and the Adirondack Defendants are not liable under either theory; (2) assuming for the sake of argument that the Adirondack Defendants are state actors or are part of a conspiracy, McHenry still needs to allege that the Adirondack Defendants were personally involved in each alleged constitutional violation; (3) McHenry misinterprets the import of *Wray v. City of New York*, 490 F.3d 189 (2d Cir 2007); (4) McHenry does not address the fact that the police and prosecutors were the intervening superceding cause of any constitutional tort; (5) assuming for the sake of argument that the Adirondack Defendants are state actors or are part of a conspiracy and had an investigative role on the multi-disciplinary team, the Adirondack Defendants are entitled to qualified immunity; (6) McHenry's motion to amend the Amended Complaint should be denied because further amendment at this late stage would be unduly prejudicial to the Adirondack

Defendants; and (7) McHenry's motion to amend the Amended Complaint should be denied because it is futile. (*See generally* Dkt. No. 99, at 7-17 [Adirondack Defs.' Reply Mem. of Law].)

Generally, in their reply memorandum of law, Defendants Henley and Washington County argue that McHenry's motion to amend the Amended Complaint should be denied because it would be unduly prejudicial to them and because it is procedurally defective. (*See generally* Dkt. No. 93-3, at 2 [Washington Cnty. Defs.' Reply Mem. of Law].)

Generally, in their reply memorandum of law, Defendants Bechard, Tefft and Village of Greenwich argue that McHenry's motion to amend the Amended Complaint should be denied because it would be unduly prejudicial to them and because it is procedurally defective. (*See generally* Dkt. No. 95, at 1-2 [Greenwich Defs.' Reply Mem. of Law].)

Generally, in his reply memorandum of law, Defendant Bell argues that McHenry's motion to amend the Amended Complaint should be denied because it is procedurally defective and because it is in violation of the Uniform Pretrial Order. (*See generally* Dkt. No. 97, at 1-4 [Def. Bell's Reply Mem. of Law].)

### 2. Defendant Zugalla's Motion to Dismiss Pisani's Complaint

Generally, in her memorandum of law, Defendant Zugalla asserts the following two arguments: (1) Pisani's claims against Zugalla are barred by the Eleventh Amendment and (2) Pisani has failed to state a claim against Zugalla pursuant to 42 U.S.C. § 1983 because he fails to allege that she was personally involved in the acts that allegedly led to his injuries. (*See generally* Dkt. No. 35-1, at 3-5 [Def. Zugalla's Mem. of Law] [Member Case].)

Generally, in his memorandum of law in response to Zugalla's motion to dismiss his complaint, Pisani asserts the following two arguments: (1) Pisani's complaint is sufficient to

withstand a motion to dismiss because it alleges personal involvement in specific actions by Defendant Zugalla and (2) Zugalla is not sued in her official capacity, but rather in her individual capacity as a state actor and therefore, the Eleventh Amendment does not apply. (*See generally* Dkt. No. 46, at 5-8 [Pisani's Response Mem. of Law].)

Generally, in her reply memorandum of law, Zugalla asserts the following two arguments: (1) Pisani's complaint alleges that Zugalla "at all relevant times . . . acted . . . in her official capacity" (Dkt. No. 1 at ¶14 [Pisani's Compl.] [Member Case]) and (2) Pisani's Complaint fails to allege facts about Zugalla's role in the alleged fabrication of evidence and coercive interviewing of witnesses. (*See generally* Dkt. No. 50, at 1-2 [Def. Zugalla's Reply Mem. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is

often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-

46, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69. Rather

than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice"

standard turns on the *plausibility* of an actionable claim. *Id*. at 556-70, 127 S. Ct. at 1965-74.

The Court explained that, while this does not mean that a pleading need "set out in detail the

facts upon which [the claim is based]," it does mean the pleading must contain at least "some

factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible

level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 554, 127 S.

Ct. at1965.[1]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw

---

[1]    It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in
*Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks
later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to
successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93,
127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the
often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading
need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully
state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47)
(emphasis added). That statement did not mean that all pleadings may achieve the requirement
of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough
facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to
relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 &
n.35 (explaining holding in *Erickson*).

on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*., at 678, 129 S. Ct. at 1949.

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.*, No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

**B.** **Legal Standard Governing Motions to Amend a Complaint**

A motion for leave to amend a complaint is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir.1979); *Meyer v. First Franklin Loan Servs, Inc*., No. 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, No. 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted). "In determining what constitutes prejudice, [courts] consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (citation and quotation omitted).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d

Cir.2002)). Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted. *See id.* (citations omitted).

## C. Standards Governing Plaintiffs' Claims

### 1. 42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted) (*abrogated on other grounds by*, *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995))). A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the

unconstitutional practices and failing to act." *Kregler*, 821 F. Supp. 2d at 655-56 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (*rev'd on other grounds by*, *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937)); *Wright*, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality. *Jones*, 691 F.3d at 81. Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Id.*

A private actor may be considered to be acting under the color of state law for purposes of Section 1983 if she was "'a willful participant in joint activity with the State or its agents.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir.2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598 (1970)). This potential liability under Section 1983 also applies to a private party who "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman*, 401 F. Supp.2d 362, 378 (S.D.N.Y.2005). Thus, to prove a private actor acted under the color of state law when she engaged in allegedly

unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor.

As to a showing of joint activity, the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983.  *See Ginsberg v. Healey Car & Truck Leading, Inc.*, 189 F.3d 268, 272 (2d Cir.1999).  It is only when a private actor takes a more active role and jointly engages in action with state actors, that he will be found to have acted under color of state law for purposes of Section 1983.  *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942, 102 S. Ct. 2744 (1982); *Adickes*, 398 U.S. at 152.

Alternatively, to demonstrate that a private party was acting under color of state law by virtue of the fact that she was engaged in a conspiracy with the state or its agents, a plaintiff must allege facts plausibly suggesting "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages."  *Fisk*, 401 F. Supp.2d at 376 (quoting *Ciambriello*, 292 F.3d at 324-25).

### a.    Denial of Fair Trial - Fabrication of Evidence and Extrajudicial Statements

"Pursuant to § 1983 and prevailing case law, denial of a right to a fair trial is a separate and distinct cause of action."  *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 723 (S.D.N.Y. 2012) (quoting *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 575 (S.D.N.Y. 2011)).  *See also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir.1997).  Such a claim based on fabrication of evidence may be properly pled where a plaintiff alleges that defendants fabricated evidence,

which was likely to influence a jury's decision, and forwarded it to prosecutors.  *See Bertuglia*, 839 F. Supp. 2d at 724; *Ricciuti*, 124 F.3d at 130.[2]  "The constitutional right in question is 'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity ... provided that the deprivation of liberty ... can be shown to be the result of [the officer's] fabrication of evidence.'"  *Jovanovic v. City of New York*, No. 04-CV-8437, 2010 WL 8500283, at *10 (S.D.N.Y. Sept. 28, 2010) (quoting  *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir.2000)).  As a result, the alleged fabrication "must be 'likely to influence a jury's decision.'"  *Ricciuti*, 124 F.3d at 130.

A § 1983 fair trial claim does not require that a plaintiff actually go to trial and such a claim may stand where, as in *Ricciuti*, the charges against the plaintiff were dismissed before trial.  *See Bertuglia*, 839 F. Supp. 2d at 724; *Ricciuti*, 124 F.3d at 127; *see also Douglas v. City of New York*, 595 F. Supp. 2d 333, 346 (S.D.N.Y.2009) ("The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place.").

To prevail upon a claim for denial of a fair trial due to prejudicial publicity, a plaintiff must establish three elements: (1) that there were "improper leaks" under the canons of ethics; (2) that the plaintiff had in fact been denied his due process rights; and (3) that other remedies, such as voir dire, peremptory challenges, and challenges for cause, were not available, or were used to no avail, to alleviate the effects of the leaks.  *See Jovanovic*, 2010 WL 8500283, at *11

---

[2]      Courts have found *Ricciuti* "to stand for the proposition that a claim for denial of a right to a fair trial may be brought alongside one for malicious prosecution even where both are supported by the same evidence." *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 576 (S.D.N.Y. 2011) (collecting cases).  *See also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir.1997).

(citing *Powers v. Coe*, 728 F.2d 97, 105-06 (2d Cir.1984). However, where such a claim arises from a plaintiff's right to proceed before an unbiased grand jury, the third element is satisfied since the referenced procedural remedies, such as voir dire, peremptory challenges, or a motion for change of venue, are unavailable. *See Jennings v. City of New York*, No. 90-CV-6049, 1991 WL 207620, at *6 (S.D.N.Y. Oct. 1, 1991).

### b. Abuse of Process

An abuse of process claim under § 1983 is governed by state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *See Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.2003) (quotation and citation omitted). "The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose –that is, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Antes v. Bonura*, No. 10-CV-5472, 2013 WL 663024, at *6 (S.D.N.Y. Feb. 25, 2013) (quotation and citation omitted).

### c. False Arrest

A claim for false arrest or false imprisonment, which terms are synonymous under New York law, is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures. *See Smith v. City of New York*, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005) (citing *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992)). The elements of such a claim, whether brought under § 1983 or New York common law, are as follows: "(1) the defendant

intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Id.* ( citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest [.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation and quotation omitted). However, under New York law, a warrantless arrest raises a rebuttable presumption that the arrest is unlawful. *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003).

### d.     Malicious Prosecution

The elements of a claim for malicious prosecution, whether brought under § 1983 or New York common law, are as follows: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

### e.     Probable Cause

"Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir.2008).

Whether probable cause exists depends upon the reasonable objective conclusion to be drawn from the facts known to the arresting officer and those working with him or her at the time of the arrest. *See Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795 (2003). *See also*

*Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir.2014) ("A police officer's purpose 'is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.'") (citation omitted).  Law enforcement officials have probable cause to arrest if they receive information from persons, "normally the putative victim[s] or eyewitness[es], who it seems reasonable to believe [are] telling the truth."  *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd, 993 F.2d 1534 (2d Cir. 1993).

Where probable cause exists for an indictment, claims of false arrest and malicious prosecution must be dismissed.  *See De La Cruz v. City of New York*, No. 11-CV-8395, 2014 WL 3719164 (S.D.N.Y. June 26, 2014).

By New York law, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health[.]"  N.Y. PENAL LAW § 260.109(1) (McKinney 2010).  "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . [l]ess than fourteen years old."  N.Y. PENAL LAW § 130.60(2) (McKinney 2001).

By New York law, "[w]illful failure of a school administrator or superintendent to submit a written report of child abuse to an appropriate law enforcement authority, as required by [N.Y. EDUC. LAW § 1128], shall be a class A misdemeanor."  N.Y. EDUC. LAW § 1129(2) (McKinney 2001).

**D.      Legal Standard Governing Affirmative Defense of Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 224, 129 S. Ct. 808 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory in all cases"). The Court may also examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  However, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983).  This is so because qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Stachell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow*, 457 U.S. at 815, 102 S. Ct. 2727). H owever, qualified immunity is immunity from suit rather than just a mere defense to liability, and the Supreme Court has stated that qualified immunity questions should be resolved at the earliest stage of the litigation. *See K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at * 10 (S.D.N.Y. Feb.5, 2013) (citing *Anderson v. Creighton*, 483 U.S. 635, n.6, 107 S. Ct. 3034

(1987); *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir.2012)). Thus, the court may grant a motion to dismiss based on qualified immunity where the defense is based upon facts that appear on the face of the complaint. *See id.* (citing *Looney v. Black*, 702 F.3d 701 (2d Cir. 2012)).

## III. ANALYSIS

### A. Whether McHenry's Amended Complaint Alleges Facts Plausibly Stating a Claim Against the Adirondack Defendants

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated by the Adirondack Defendants in their memorandum of law, (Dkt. No. 77-2, at 16-22 [Adirondack Defs.' Mem. of Law]) and reply memorandum of law, (Dkt. No. 99, at 10-13 [Adirondack Defs.' Reply Mem. of Law]). The Court would only add the following points.

First, McHenry has failed to allege facts plausibly suggesting that the Adirondack Defendants were personally involved in the fabrication of evidence against him. McHenry alleges that the Adirondack Defendants knew that S.C. was mentally incompetent and did not understand the nature of an oath or the consequence of making a false statement and that the Adirondack Defendants likewise knew that all the infant deponents did not understand the nature and consequences of an oath, but nonetheless, the Adirondack Defendants participated in interviewing those infants and in taking statements from those infants, which were used against McHenry before the grand jury. However, McHenry fails to allege that the Adirondack Defendants knew that the infants' statements were false. Moreover, the counts of the Indictment against McHenry, which were based on S.C.'s testimony, were dismissed because the court concluded that S.C. was not competent to testify due to mental illness or defect, not because her testimony was false. Consequently, McHenry's claim of the denial of a fair trial based on fabrication of evidence against the Adirondack Defendants is dismissed.

Second, McHenry has failed to allege facts plausibly suggesting that the Adirondack Defendants were personally involved in the denial of his right to a fair trial by leaking information to the press prior to the Grand Jury hearing. Instead, McHenry clearly alleges that it was the law enforcement and prosecutor Defendants who disclosed information to the media regarding the allegations and charges against McHenry for the purpose of depriving him of a fair trial. Consequently, McHenry's claim of the denial of a fair trial based on extrajudicial statements against the Adirondack Defendants is dismissed.

Third, McHenry has failed to allege facts plausibly suggesting that the Adirondack Defendants were personally involved in his arrest or prosecution beyond their involvement in interviewing and taking statements from S.C. and the other infants. Even assuming the Adirondack Defendants intentionally confined or prosecuted McHenry, such confinement or prosecution was otherwise privileged based on the allegations in the Amended Complaint and the exhibits attached thereto. Given the statements provided by S.C. and the other infants, probable cause existed to arrest McHenry for endangering the welfare of a child and sexual abuse in the second degree. Consequently, McHenry's claims of false arrest and malicious prosecution against the Adirondack Defendants are dismissed.

For all of these reasons, the motion to dismiss McHenry's Amended Complaint as against the Adirondack Defendants is granted. Consequently, the Court need not, and does not decide whether the Adirondack Defendants acted under color of law or whether they are entitled to qualified immunity.

**B.** **Whether McHenry's Motion to Amend the Amended Complaint Should Be Granted**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by the Adirondack Defendants in their reply memorandum of law, (Dkt. No. 99, at 14-17 [Adirondack Defs.' Reply Mem. of Law]) as well as the reply memoranda of law of the Washington County Defendants (Dkt. No. 93-3, at 2 [Washington Cnty. Defs.' Reply Mem. of Law]), the Village of Greenwich Defendants (Dkt. No. 95, at 1-2 [Vill. of Greenwich Defs.' Reply Mem. of Law]) and Defendant Bell (Dkt. No. 97, at 2-4 [Def. Bell's Reply Mem. of Law]). The Court would only add the following points.

As indicated in Point II.B. of this Decision and Order, a motion to amend a complaint may be denied for, among other reasons, delay and undue prejudice to the opposing party or futility. Here, McHenry's cross-motion to amend the Amended Complaint must be denied with prejudice for the following reasons. First, McHenry has previously amended his complaint once, upon consent of the parties and with permission of the Court. The Proposed Second Amended Complaint contains allegations regarding events that occurred prior to the filing of the Amended Complaint, and indeed, prior to the commencement of this action almost two years ago. Moreover, McHenry sought to further amend his Amended Complaint well after the Rule 16 schedule order deadline for the amendment of pleadings. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.) Because McHenry fails to provide any explanation for his delay in seeking to further amend the Amended Complaint, and because further amendment after such a delay would prejudice Defendants, the cross-motion to amend the Amended Complaint is denied on this ground alone.

Second, McHenry's Proposed Second Amended Complaint contains allegations implicating defendants in addition to the Adirondack Defendants, against whose motion to dismiss McHenry responds with his purported cross-motion to amend. Instead, McHenry was required, in accordance with the Local Rules of this Court, to file a separate motion to further amend his complaint, allowing all defendants the opportunity to respond. McHenry's delay as well as his failure to adhere to the Local Rules unduly prejudices the other defendants, and for this reason alone, his cross-motion to amend the Amended Complaint is denied.

Third, and finally, the Proposed Second Amended Complaint does not cure the defects of the Amended Complaint regarding the bases for McHenry's Section 1983 claims of denial of a fair trial, false arrest, and malicious prosecution. Consequently, the Proposed Second Amended Complaint is futile and McHenry's cross-motion to amend the Amended Complaint is denied for this reason alone.

For all of these reasons, McHenry's cross-motion to amend the Amended Complaint is denied.

### C. Whether Pisani's Complaint Alleges Facts Plausibly Stating a Claim Against Defendant Zugalla

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated by Defendant Zugalla in her memorandum of law (Dkt. No. 35-1 at 3-5 [Def. Zugalla's Mem. of Law] [Member Case]) and her reply attorney affirmation, (Dkt. No. 50, at 1-2 [Aff. of Rachel M. Kish, Oct. 27, 2014]). The Court would only add the following points.

To the extent Pisani seeks damages against Zugalla in her official capacity on his Section 1983 claims, those claims are dismissed. The Eleventh Amendment bars suits against a state in

25

federal court, under the fundamental principle of sovereign immunity. *See* U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028 (1997). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47, 113 S. Ct. 684 (1993). Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

According to the Amended Compliant, Defendant Zugalla is an employee of the New York State Department of Education in the Office of School Personnel Review and Accountability. This organization is an arm of the state and thus the employees of this organization is entitled to Eleventh Amendment immunity from suit for damages against them in their official capacities. Because Pisani seeks only damages against Zugalla, whom Pisani claims, "in doing the things alleged herein and at all times acted in the course and scope of her position . . . in her official capacity[,]" Pisani's claims against Zugalla are dismissed. *See Lane v. Carpinello*, No. 07-CV-751, 2009 WL 3074344, at *12 (N.D.N.Y. Sept. 24, 2009) (citing *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984)).

To the extent Pisani purports to allege claims against Zugalla in her personal capacity, such claims are dismissed because Pisani fails to allege facts that plausibly suggest any claim against Zugalla for the following reasons.

First, for the same reasons asserted in Point III.A. of this Decision and Order regarding McHenry's similar claims against the Adirondack Defendants, Pisani likewise fails to allege

Zugalla's personal involvement in the fabrication of evidence or extrajudicial statements in support of Pisani's claim for the denial of a fair trial.

Second, for the same reasons asserted in Point III.A. of this Decision and Order, regarding McHenry's similar claims against the Adirondack Defendants, Pisani likewise fails to allege Zugalla's personal involvement in false arrest or malicious prosecution of Pisani. Specifically, the Court finds that, based on the allegations of Pisani's Complaint, probable cause existed to arrest Pisani for the failure to submit a written report of child abuse to an appropriate law enforcement authority.

Third, to the extent Pisani seeks to assert an abuse of process claim against Zugalla, said claim is dismissed because Pisani fails to allege facts plausibly suggesting that Zugalla had no justification for her actions and because Pisani failed to allege facts plausibly suggesting Zugalla aimed to achieve a collateral purpose beyond, or in addition to, Pisani's criminal prosecution.

For these reasons, Zugalla's motion to dismiss Pisani's Complaint against her is granted in its entirety.

**ACCORDINGLY**, it is

**ORDERED** that the motion to dismiss plaintiff Eric McHenry's complaint as against defendants Adirondack Health Institute, Inc., Rebecca Evansky, Emily Ferraro and Jennifer MacKnight (Dkt. No. 77, Lead Case) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the motion for a more definite statement by defendants Adirondack Health Institute, Inc., Rebecca Evansky, Emily Ferraro and Jennifer MacKnight (Dkt. No. 77, Lead Case) is **<u>DENIED as moot</u>**; and it is further

**ORDERED** that plaintiff Eric McHenry's cross-motion to amend the Amended Complaint (Dkt. No. 92, Lead Case) is **<u>DENIED</u>**; and it is further

**ORDERED** that the motion to dismiss plaintiff Benjamin A. Pisani's complaint as against defendant Anne Zugalla (Dkt. No. 35, Member Case) is **<u>GRANTED</u>**.

Dated: May 15, 2015
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge